UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ADRIAAN TONY VANDERZWAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PEBBLEBROOK HOTEL TRUST,<br><br>　　　　　Defendant. | Case No. 16-cv-04415-LB<br><br>**ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS AND DENYING THE PLAINTIFF'S MOTION TO REMAND**<br><br>Re: ECF Nos. 5 & 15 |

**INTRODUCTION**

This case concerns the collective-bargaining rights of San Francisco-based hotel employees.[1] Adriaan Vanderzwan, a hotel employee and union member, alleges that Pebblebrook Hotel Trust (a hotel owner) intentionally interfered with the right — established under a labor agreement — to organize employees at new hotels.[2] As a result of Pebblebrook's interference, Mr. Vanderzwan, his union, and others were deprived of the labor contract's benefits, including the benefits of increased bargaining power and union density in San Francisco hotels.[3] Mr. Vanderzwan

---

[1] *See generally* Compl. — ECF No. 1-2. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. ¶¶ 1, 2, 6–7, 10–12, 15–18.

[3] *Id.* ¶¶ 17–18, 21–22.

ORDER — No. 16-cv-04415-LB

thereafter sued in state court, and Pebblebrook removed the action to this court.[4] Now, Mr. Vanderzwan moves for remand and Pebblebrook moves to dismiss the case.[5]

The court can decide this matter without oral argument and so it vacated the hearing previously set for October 27, 2016.[6] *See* N.D. Cal. Civ. L.R. 7-1(b). Because Mr. Vanderzwan's claim is completely preempted by federal law, removal was proper and the court denies his motion to remand. The court grants Pebblebrook's motion to dismiss because, as pled, Mr. Vanderzwan lacks standing, but grants leave to amend.

## STATEMENT

Pebblebrook is a real estate investment trust that owns multiple hotels in San Francisco, California.[7] Mr. Vanderzwan works as a bell person at one of Pebblebrook's hotels — the Drake.[8] He also belongs to UNITE HERE! Local 2, a labor union, which is his "exclusive collective bargaining representative with respect to his employment at the Drake Hotel."[9]

Throughout 2004–2006, Local 2 negotiated a multi-employer collective bargaining agreement ("CBA") and a memorandum of understanding on additional hotels.[10] The CBA and memorandum were the apparent result of a strike, a lockout, and the union's "demand that the employers recognize Local 2 as the representative of employees at any newly[] operated hotel in San Francisco . . . , and that the employers . . . include certain basic economic terms in a first collective bargaining agreement covering those employees."[11] Both agreements (and their successors) bind Mr. Vanderzwan, the Drake (Mr. Vanderzwan's employer), and InterContinental Hotels Group.[12]

---

[4] Notice of Removal — ECF No. 1.

[5] Motion to Dismiss — ECF No. 5; Motion to Remand — ECF No. 15.

[6] Clerk's Notice — ECF No. 24.

[7] Compl. ¶¶ 2, 11–12.

[8] *Id.* ¶ 1.

[9] *Id.*

[10] *Id.* ¶¶ 6–7.

[11] *Id.* ¶ 6.

[12] *Id.* ¶¶ 6–7, 9, 18.

ORDER — No. 16-cv-04415-LB                    2

1    InterContinental is a hotel-management company.[13] In June 2015, InterContinental acquired
2 another company and, as a result, "managed and operated seven new hotels."[14] Pebblebrook
3 owned four of the seven.[15] No labor union represented the new hotels' employees, but, under the
4 memorandum of understanding, Local 2 notified InterContinental of its intent to do so.[16]
5 InterContinental responded that the memorandum was "moot as applied to the new hotels owned
6 by Pebblebrook" because Pebblebrook was terminating InterContinental's management
7 agreement.[17]

8    Pebblebrook terminated the agreement because of Local 2's intent to organize the new hotels'
9 employees and for the "sole purpose of preventing InterContinental from complying with the
10 [memorandum of understanding]."[18] Pebblebrook did this, Mr. Vanderzwan alleges, to deprive
11 him (and others) of the benefits of the memorandum, and to "deprive InterContinental's
12 employees [of] the benefits of union representation."[19] As a result, "Local 2 has been denied its
13 right to organize employees" and he "has been denied the benefits" thereof, including the
14 "increased union power in bargaining with Pebblebrook-owned hotels and increased union density
15 in San Francisco hotels."[20]

16    Mr. Vanderzwan accordingly sued Pebblebrook in California state court.[21] He asserted one
17 claim, alleging that "Pebblebrook engaged in unlawful and unfair conduct by interfering with the
18 [memorandum of understanding]" in violation of California's Unfair Competition Law ("UCL"),
19 Cal. Bus. & Prof. Code § 17200. Pebblebrook removed the case on the basis of complete
20 preemption under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.

---

[13] *See id.* ¶¶ 6, 9, 10.

[14] *Id.* ¶ 10.

[15] *Id.* ¶¶ 11.

[16] *Id.* ¶¶ 10, 13.

[17] *Id.* ¶ 14.

[18] *Id.* ¶¶ 14–16.

[19] *Id.* ¶ 17.

[20] *Id.* ¶ 18.

[21] *See generally id.*

1  § 185(a).[22] The parties then filed competing motions: Mr. Vanderzwan argues his claim is not

2  preempted, the court lacks jurisdiction, and thus the case should be remanded; Pebblebrook argues

3  LMRA section 301 preempts Mr. Vanderzwan's claim, and that his section 301 claim should be

4  dismissed under Rule 12(b)(6).[23]

## GOVERNING LAW

### 1. Removal Jurisdiction

A defendant in state court may remove an action to federal court if the action could have been filed originally in federal court. 28 U.S.C. § 1441(b). Original jurisdiction may be based on diversity or federal-question jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In federal-question cases, the "well-pleaded complaint" rule generally applies: a federal question must be presented on the face of the plaintiff's complaint at the time of removal for federal-question jurisdiction to exist. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). An anticipated federal defense is not sufficient to confer jurisdiction. *Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983). But a plaintiff may not defeat removal by omitting necessary federal questions from his or her complaint. *Id.* at 22.

A federal court may accordingly exercise removal under the "artful pleading" doctrine even if a federal question does not appear on the face of the complaint. *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health and Envtl. Quality of the State of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000). The artful pleading doctrine applies when: (1) federal law completely preempts the state-law claim; (2) "the claim is necessarily federal in character"; or (3) "the right to relief depends on the resolution of a substantial, disputed federal question." *Id.* Courts should, however, "invoke the [artful pleading] doctrine only in limited circumstances as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (internal quotations omitted). Additionally, the "mere

---

[22] Notice of Removal — ECF No. 1.

[23] Motion to Dismiss — ECF No. 5; Motion to Remand — ECF No. 15.

ORDER — No. 16-cv-04415-LB                4

1  presence of a federal issue in a state cause of action does not automatically confer federal-question

2  jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

3  Procedurally, the action must be removed within 30 days of service of the initial pleading. 28

4  U.S.C. § 1446(b). The defendant has the burden of proving the basis for the federal court's

5  jurisdiction, and "the removal statute is strictly construed against removal jurisdiction." *Nishimoto

6  v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *see also Shamrock Oil

7  & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941). If there is a defect in the removal procedure

8  or in the court's jurisdiction, the plaintiff may move to remand the case to state court. 28 U.S.C.

9  § 1447(c).

**2.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## ANALYSIS

### 1. The Court Construes Mr. Vanderzwan's UCL Claim as a Claim for Tortious Interference

As an initial matter, the court construes Mr. Vanderzwan's UCL claim in the context of a claim for tortious interference with a contract. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof Code § 17200. The UCL "embraces anything that can properly be called a business practice and that at the same time is forbidden by law." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003)). To that end, the statute "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Id.* (quoting *Korea Supply Co.*, 29 Cal. 4th at 1143).

A UCL claim may be based on the intentional interference with another's contract. *See id.* To state a claim for inducing a breach of contract, a plaintiff must show (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional act designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption; and (5) resulting damage. Witkin Summary of California Law § 731(2) (10th ed. 2005) (citing *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

Here, Mr. Vanderzwan alleges that Pebblebrook "engaged in unlawful and unfair conduct by interfering with the [memorandum of understanding]."[24] More specifically, Pebblebrook allegedly "terminated its management agreement . . . for the sole purpose of preventing InterContinental from complying with the [memorandum]" after Local 2 noticed its intent to represent employees at

---

[24] Compl. ¶ 20.

ORDER — No. 16-cv-04415-LB                6

the new hotels.[25] And because of Pebblebrook's interference, Local 2, Mr. Vanderzwan, and the new hotels' employees were denied benefits under the memorandum.[26]

The parties appear to construe these allegations as a claim for tortious interference,[27] and so too will the court. The next issue, then, is whether LMRA section 301 preempts Mr. Vanderzwan's tortious-interference claim.

**2. LMRA Section 301 Preempts Mr. Vanderzwan's Claim**

Pebblebrook removed this case under the "complete preemption" doctrine.[28] The issue is whether LMRA section 301 completely preempts Mr. Vanderzwan's claim, conferring federal jurisdiction and rendering removal proper.

Section 301 of the LMRA completely preempts state-law claims — both in contract and tort — that are "inextricably intertwined with the consideration of the terms of [a] labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). Section 301 states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court." 29 U.S.C. § 185(a). The Supreme Court has interpreted this section "as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers*, 471 U.S. at 209. "The court subsequently held that this federal common law preempts the use of state contract law in CBA interpretation and enforcement." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc). Section 301 preemption is complete, and so any preempted state-law claim will be considered to arise under federal law. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).

---

[25] *Id.* ¶¶ 14–16.

[26] *Id.* ¶¶ 17–18, 22–23.

[27] *See, e.g.*, Motion to Remand at 12, 14 (arguing that here, "tortious interference with contract/business relationship can be resolved without interpreting the collective bargaining agreement."); Opposition to Motion to Remand — ECF No. 19 at 15.

[28] Notice of Removal ¶¶ 15–28.

ORDER — No. 16-cv-04415-LB                7

1   But "not every dispute concerning employment, or tangentially involving a provision of a
2   collective-bargaining agreement, is preempted by § 301." *Allis-Chalmers*, 471 U.S. at 211. To
3   determine whether a state-law claim is preempted, the Ninth Circuit applies a two-step inquiry.
4   *See Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032–34 (9th Cir. 2016);
5   *Burnside*, 491 F.3d at 1059–60. "First, a court must determine 'whether the asserted cause of
6   action involves a right conferred upon an employee by virtue of state law, not by a CBA.'"
7   *Kobold*, 832 F.3d at 1032 (quoting *Burnside*, 491 F.3d at 1059). To do so, a court must focus on
8   the legal character — *i.e.* the legal basis — of the claim, not whether the facts could give rise to
9   CBA-based grievance. *See id.* at 1033 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)).
10  "'If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis
11  ends there.'" *Id.* at 1032 (quoting *Burnside*, 491 F.3d at 1059) (alteration in original). If not, and
12  the claim "exists independently of the CBA," the court moves to the second step. *Id.* 1032–33
13  (quoting *Burnside*, 491 F.3d at 1059).

14  At the second step, the court asks whether the claim "is nevertheless substantially dependent
15  on analysis of a collective-bargaining agreement." *Id.* (quoting *Burnside*, 491 F.3d at 1059)
16  (internal quotations omitted). This determination depends on "whether the claim can be resolved
17  by 'look[ing] to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it
18  is not." *Id.* at 1033 (quoting *Burnside*, 491 F.3d at 1060) (alteration in original). In this context, the
19  term "interpret" has a narrow meaning: "it means something more than 'consider,' 'refer to,' or
20  'apply.'" *Id.* (quoting *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th
21  Cir. 2000)). Thus, if the state-law claim substantially depends on interpretation of a CBA, it is
22  preempted; if it does not, then it can proceed under state law. *Id.*

23  Here, Mr. Vanderzwan asserts a state-law claim for tortious interference (through the UCL).[29]
24  Ordinarily, absent diversity, this state-law claim would not alone confer federal jurisdiction. But
25  because the subject of the dispute involves the CBA and memorandum of understanding, the court
26  applies the Ninth Circuit's two-step inquiry to determine whether the claim is preempted.

27
28  [29] Compl. ¶¶ 19–24.

ORDER — No. 16-cv-04415-LB           8

At the first step, it is unclear whether Mr. Vanderzwan's claim is independent of the labor contracts. On one hand, the alleged lost benefits — *i.e.* increased bargaining power and union density, and (raised for the first time in the motion to remand) the right to arbitrate disputes — arise out of and depend on the CBA and memorandum. This may lead one to conclude that the claim exists solely as a result of these agreements and is accordingly preempted. But, on the other hand, the legal character of the claim arises out of state law: Mr. Vanderzwan sued to enforce his right to be free of Pebblebrook's interference with his contracts. And in this way, the claim appears independent of the agreements. Nevertheless, the court does not need to resolve this issue because the claim is preempted at the second step.

In *Rachford v. Air Line Pilots Association*, the plaintiff's claims for intentional and negligent interference were preempted under the Railroad Labor Act (a law similar to the LMRA). No. C 03-3618 PJH, 2006 WL 1699578, at *6–*8 (N.D. Cal. June 16, 2006). In that case, the plaintiffs were former employees of one defendant, an airline. *Id.* at *1. The plaintiffs entered into a CBA with the airline, but the airline's parent company (another defendant in the case) was not party to that agreement. *Id.* at *1. Later, the defendants settled a government shutdown of the airline's operations, which the employees asserted was a violation of the CBA. *Id.* at *1. After filing a CBA-grievance, the employees sued and (among other things) asserted claims for intentional and negligent interference with the CBA against the airline's parent company. *Id.* at *1–*2. The Railroad Labor Act — which, like the LMRA, "preempt[s] state law causes of action that depend upon interpretation of CBAs" — preempted the claims. *Id.* at *6–*8. The court explained why the Act preempted the plaintiffs' intentional interference claim:

> The court knows of knows of no way, without interpreting the CBA or applying its terms, to determine whether [the parent] . . . engaged in intentional acts designed to induce a breach of the CBA or disruption of the contractual relationship, which acts did in fact result in an actual breach of the CBA or disruption of the contractual relationship. In other words, in order to determine whether [the parent] . . . interfered with the CBA, or to determine whether the contractual relationship was 'disrupted,' the court would have to ascertain the nature of the contractual relationship, which would necessitate interpreting the CBA or applying its terms.

*Id.* at *7. The same logic applied to the plaintiff's claim for negligent interference. *Id.* at *8.

And the same logic applies here, too. The court cannot determine — without interpreting the CBA and memorandum of understanding — critical elements of Mr. Vanderzwan's claim; for example, whether Pebblebrook caused InterContinental to breach those agreements. *See* Witkin Summary of California Law § 731(2) (10th ed. 2005). To do so, the court would have to determine (1) InterContinental's contractual obligations, and (2) that its failure to perform those obligations constituted a breach. And that would require interpretation of the CBA and memorandum of understanding.

This case is different from *Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Mgmt. Co.* (cited by Mr. Vanderzwan), where the plaintiff's third-party beneficiary claim was not preempted. 393 F. Supp. 2d 972 (N.D. Cal. 2005). There, the plaintiff-union entered into a CBA with the owners of a hotel. *Id.* at 976. Several years later, a new company purchased the hotel and assumed ownership and management responsibilities. *Id.* at 976–77. The union then sued "as a third-party beneficiary to an express agreement between [the new owner] and [the previous owners] . . . that the new hotel would assume the collective bargaining agreement." *Id.* at 984. The union alleged that the new owner "entered into a separate contract with [the previous owners] . . . concerning assumption of the collective bargaining agreement, then subsequently breached that contract" by failing to do so. *Id.* at 985. In this context, "[t]he key document for interpreting plaintiff's claim [was] not the labor agreement, but rather the alleged" contract to assume the CBA, and "[t]he fact that this contract allegedly concerned the extension of the collective bargaining agreement [was] not 'inextricably intertwined' with the terms of the labor agreement." *Id.* The third-party beneficiary claim would "not necessarily require interpretation of any specific terms in the [CBA]," and thus LMRA section 301 did not preempt the claim. *Id.*

Leaning on *Hotel Employees*, Mr. Vanderzwan argues that his "complaint concerns Pebblebrook's termination or breach of its hotel operating agreement(s) with InterContinental," and analysis of those agreements is "extrinsic" to the CBA and memorandum of understanding.[30] But there are two problems. First, the complaint does not assert a claim to enforce Mr.

---

[30] Reply to Motion to Remand at 5.

ORDER — No. 16-cv-04415-LB          10

1   Vanderzwan's rights as a third-party beneficiary to the Pebblebrook–InterContinental management
2   agreements. *See* Cal. Civ. Code § 1559. He does not allege that he is an intended beneficiary of
3   those agreements or that Pebblebrook breached them — only that it terminated them.[31] His claims
4   moreover plainly assert deprivation of his (and others') rights under the CBA and memorandum of
5   understanding, not the management agreements.[32] The second problem, related to the first, is that
6   Mr. Vanderzwan's claimed injury — the deprivation of labor-contract rights — requires an
7   analysis of those rights and whether he was legally deprived of them. This is true even if the claim
8   is not precisely "Pebblebrook induced InterContinental's breach"[33] because the claim invokes
9   Local 2 and Mr. Vanderzwan's rights under the CBA and memorandum — the definition and
10  scope of which would require analysis and interpretation of those agreements. Unlike *Hotel
11  Employees*, then, Mr. Vanderzwan's claim requires interpretation of the memorandum of
12  understanding (and likely the CBA), not just Pebblebrook's management agreements with
13  InterContinental.
14      Under the second step of the inquiry, Mr. Vanderzwan's claim substantially depends on
15  analysis of the labor agreements and is preempted.

**1.3 Pebblebrook's Employer Status Is Irrelevant**

Mr. Vanderzwan argues that LMRA section 301 does not preempt his claim if Pebblebrook is not classified as a (joint) employer.[34] Yet he concedes that the claim is preempted if Pebblebrook does qualify as an employer.[35] The issue is therefore whether Pebblebrook's "employer" status precludes (or allows) an LMRA section 301 claim and thereby affects the preemption analysis.

---

[31] Compl. ¶¶ 14–17.

[32] *See, e.g.*, Compl. ¶¶ 17–18, 20–23.

[33] *See* Reply to Motion to Remand — ECF No. 23 at 5 (arguing that "Plaintiff does not allege a breach of the [memorandum].")

[34] *See* Motion to Remand at 10–14.

[35] *Id.* at 14–16.

ORDER — No. 16-cv-04415-LB            11

"The plaintiff's claim is the touchstone" of the LMRA preemption analysis. *Cramer*, 255 F.3d at 691. "Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action." *Painting and Decorating Contractors Ass'n of Sacramento, Inc. v. Painters and Decorators Joint Comm. of the East Bay Counties, Inc.*, 707 F.2d 1067, 1071 (9th Cir. 1983) (quoting *Rehmar v. Smith*, 555 F.2d 1362, 1366 (9th Cir. 1976)). "Section 301(a) does not contain any requirement that the parties to an action brought thereunder must also be the parties to the allegedly breached contract." *Id.* And "it is well settled that parties in a § 301 action do not necessarily have to be employers or labor organizations." *Id.* at 1070 n.2. To exclude non-employers from section 301 CBA-related litigation "would be contrary to the policy underlying § 301" — to promote the uniform interpretation of labor contracts in federal courts. *Id.* at 1071–72.

Here, Mr. Vanderzwan sued Pebblebrook, a real estate investment trust that owns multiple San Francisco hotels, including the Drake and four of the seven new hotels at issue.[36] Pebblebrook maintains that it is not Mr. Vanderzwan's employer, and so Mr. Vanderzwan argues that his claim cannot be preempted.[37] But as shown above, Pebblebrook's "employer" status is irrelevant because the subject matter of the action — Mr. Vanderzwan's rights under the labor contracts — depends on an analysis of those agreements. Pebblebrook's status consequently does not change the preemption analysis, and the court denies Mr. Vanderzwan's related request for jurisdictional discovery.

*   *   *

In sum, LMRA section 301 completely preempts Mr. Vanderzwan's claim because it "substantially depends" on analysis of the CBA and memorandum of understanding and Pebblebrook's "employer" status is irrelevant. Removal was therefore proper, and the court treats the complaint as asserting a section 301 claim. *See Kobold*, 832 F.3d at 1034 ("[O]nce a state law

---

[36] Compl. ¶¶ 2, 11–12.

[37] *See* Response to Motion to Remand — ECF No. 19 at 9; Reply to Motion to Remand at 2.

claim has been found substantially dependent upon analysis of a CBA under the second prong of *Burnside*, most often 'that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.'") (quoting *Allis-Chalmers*, 471 U.S. at 220).

### 2. Mr. Vanderzwan Lacks Standing Under LMRA Section 301

Construing Mr. Vanderzwan's claim under LMRA section 301, the next issue is whether he has standing to bring such a claim.

The general rule is that only unions have standing to assert claims under a collective bargaining agreement. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 511 (9th Cir. 1978); *Love v. Permanente Med. Grp.*, No. 12-cv-05679-WHO, 2013 WL 6731463, at *5 (N.D. Cal. Dec. 19, 2013). But individual employees may assert claims directly under section 301 to enforce "uniquely personal rights" — such as wages, hours, overtime pay, and wrongful discharge. *Id.* An employee may also bring a "hybrid" action, where he or she alleges that both (1) the union breached its duty of fair representation and (2) the employer breached the CBA. *See Love*, 2013 WL 6731463 at *5.

Here, Mr. Vanderzwan is an individual Drake Hotel employee and belongs to Local 2, a union.[38] He alleges that Pebblebrook's conduct has denied him benefits under the memorandum of understanding, "includ[ing] increased union power in bargaining with Pebblebrook-owned hotels and increased union density in San Francisco hotels."[39] He accordingly alleges that he "is getting less out of the" labor agreements because of Pebblebrook's actions and has "suffered an economic injury."[40] He also asserts that others have been damaged: Local 2 is unable to enforce the agreements and organize employees at the new hotels, and the new hotels' employees cannot obtain the benefits of union representation.[41]

---

[38] Compl. ¶ 1.

[39] *Id.* ¶¶ 18, 22.

[40] *Id.* ¶¶ 18, 23.

[41] *Id.* ¶¶ 17, 21–22.

1   On these facts, the general rule of LMRA section 301 standing applies. Mr. Vanderzwan's
2   alleged injuries are not "uniquely personal," but instead are broadly applicable to the union and
3   hotel employees as a whole. And he does not include Local 2 to assert a "hybrid" claim; just
4   opposite: he intends to bring join Local 2 as a plaintiff in an amended complaint.[42] On this record,
5   Mr. Vanderzwan therefore lacks standing and the court dismisses the complaint.

### 3. The Court Grants Leave to Amend

Pebblebrook urges that Mr. Vanderzwan should not be given leave to amend his complaint because any amendment would be futile.[43]

Under Federal Rule of Civil Procedure 15(a), leave to amend should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1117–18 (9th Cir. 2013). Because "Rule 15 favors a liberal policy towards amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted." *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989). Courts generally consider five factors when assessing the propriety of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party, and whether the party has previously amended the pleadings. *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 n.3 (9th Cir.2009).

Here, the record does not support a finding of undue delay, bad faith, or prejudice. Regarding futility, the court appreciates Pebblebrook's arguments on the bars to Mr. Vanderzwan's potential amended complaint, but thinks it best to address any deficiencies when the amended complaint is filed and in the context of a fully briefed challenge. The court therefore grants leave to amend.

---

[42] Opposition to Motion to Dismiss — ECF No. 20 at 4.
[43] *See* Reply to Motion to Dismiss — ECF No. 22 at 12–18.

**CONCLUSION**

The court denies Mr. Vanderzwan's motion to remand and denies his request for jurisdictional discovery. The court grants Pebblebrook's motion to dismiss, but grants Mr. Vanderzwan leave to amend his complaint. He must file an amended complaint within 21 days of this order. If he does not, the Clerk will close the case.

**IT IS SO ORDERED.**

Dated: October 31, 2016

_____
LAUREL BEELER
United States Magistrate Judge